# In the United States District Court for the Western District of Texas

| Rothe Development Corporation | § | |
| --- | --- | --- |
| | § | |
| v. | § | Civil No. SA-98-CA-1011-XR |
| | § | |
| United States Department of Defense, et al. | § § § | |

## Order

On this date, the Court considered Plaintiff's Motion for Attorney's Fees pursuant to the Equal Access to Justice Act ("EAJA") (Docket No. 372), filed with this court on March 30, 2009.[1] After careful consideration, Plaintiff's Motion for Attorney's Fees is DENIED.

## Procedural Background

In the most recent phase of this litigation, *Rothe VII*,[2] the Federal Circuit ruled in Plaintiff's favor, reversing in part this Court's decision and holding that Section 1207 of the National Defense Authorization Act of 1987 (hereinafter "Section 1207") as reenacted in 2006, facially "violates the equal protection component of the Fifth Amendment right to due process."[3] In the same opinion,

---

[1] Docket No. 372.

[2] *Rothe Development Corp. v. United States Dep't of Defense*, 545 F.3d 1023 (Fed. Cir. 2008) (hereinafter *Rothe VII*).

[3] *Id.* at 1050.

the Federal Circuit denied as premature Plaintiff's request for attorney's fees, stating that there had been no final judgment yet rendered in the case.[4] Final judgment was entered by this Court on February 27, 2009.[5] The Plaintiff then moved for attorney's fees pursuant to the EAJA, which this Court now considers.[6]

## Attorney's Fees Under the EAJA

The EAJA provides that a Court "shall award to a prevailing party other than the United States fees and other expenses … incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*"[7] A district court's decision regarding a request for attorney's fees under the EAJA is afforded significant deference and reviewed for abuse-of-discretion.[8]

---

[4] *Id.*; *see also* 28 U.S.C. § 2412(d)(1)(B) ("[A] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection.").

[5] Docket No. 369.

[6] Docket No. 372.

[7] 28 U.S.C. § 2412(d)(1)(A) (emphasis added).

[8] *See Pierce v. Underwood*, 487 U.S. 552, 559 (1988).

## Discussion

### A. Plaintiff's Arguments

Plaintiff argues that the position of the United States was not substantially justified and that no special circumstances exist to make an award of fees unjust.[9] Plaintiff also argues that it is entitled to attorney's fees incurred since this action was commenced in 1994.[10] Additionally, Plaintiff seeks an enhancement to the EAJA's cost-of-living adjusted base rate.[11] Because the Court denies Plaintiff's motion for attorney's fees on the basis that the DoD's position was substantially justified, it is unnecessary for the Court to address Plaintiff's additional arguments, including an enhancement to a fees award, and Plaintiff's entitlement to fees prior to the ruling by the Federal Circuit in *Rothe V*.[12]

## Legal Analysis

### I. The DoD was Substantially Justified in its Position

#### A. The Legal Standard for Substantial Justification

The standard for determining substantial justification is not that the Government was "justified to a high degree," but rather that it was justified to a degree

---

[9] Docket No. 372 at 14-33; *see also* Docket No. 377 at 1-8.

[10] *Id.* at 6-8.

[11] Docket No. 372 at 30.

[12] However, the Court notes that even if Plaintiff were awarded attorney's fees, such an award would not include fees that were denied by this Court in *Rothe IV*, as this holding was affirmed by the Federal Circuit in *Rothe V* and was not disturbed in its subsequent ruling in *Rothe VII*.

that could satisfy a reasonable person.[13] In other words, substantial justification is maintaining a position that a "reasonable person could think [is] correct, that is, if it has a reasonable basis in law and fact."[14] The Court finds that the DoD was substantially justified in its position.

>   B.   **There is a Reasonable Basis in Law for the DoD's Position**
>
>   1.   **In proceeding through the events as they occurred, the DoD's position was reasonably based in law**

The procedural history of the case at bar and the DoD's string of successes throughout the litigation indicate that the DoD had a reasonable basis in law for its position. Objective indicia can be relevant when determining whether the Government was substantially justified in its position.[15] A string of successes is a relatively good indicator of the Government's substantial justification.[16] The Court finds that the objective indicia provided by the procedural history of the case at bar are sufficiently conclusive that the government was substantially justified in its position.

In determining whether the government was reasonable in its position, the Court must "view events as they occurred rather than with the benefit of

---

[13] *Pierce*, 487 U.S. 552 at 565.

[14] *Id.*

[15] *Id.*

[16] *See id.* (in comparing the objective indicia of a string of losses to a string of successes, the Court opined that "a string of losses can be indicative; and even more so a string of successes").

hindsight."[17] Accordingly, the Court finds that, in proceeding through the events of this case as they occurred, the DoD had a reasonable basis in law to substantially justify the DoD's position. At the commencement of this action, this Court first agreed with the DoD's position in *Rothe I*, granting summary judgment to the DoD and upholding the constitutionality of Section 1207 as enacted in 1992 (hereinafter "1992 version").[18] In *Rothe III*, the Federal Circuit remanded the case, but declined to upset the judgment in favor of the DoD at that time.[19] On remand, however, this Court agreed with the DoD for a second time, granting the DoD's motion in part and holding that Plaintiff's Little Tucker Act claim and its requests for an injunction against further work on the contract and for an equitable award of the contract were moot.[20] Although this Court also held that Plaintiff could continue to maintain its claims for declaratory judgment that Section 1207 was unconstitutional on its face and as applied to Rothe in 1998,[21] this ruling was not necessarily in favor of Plaintiff and provided further justification for the DoD to maintain its position in the litigation. In *Rothe IV*, this Court held that Section 1207 was unconstitutional as applied to Rothe in

---

[17] *Morris Mech. Enters., Inc. v. United States*, 728 F.2d 497, 499 (Fed. Cir. 1984).

[18] *Rothe Dev. Corp. v. U.S. Dep't of Def.,* 49 F. Supp. 2d 937, 954 (W.D. Tex. 1999) (hereinafter *Rother I*).

[19] *Rothe Dev. Corp. v. U.S. Dep't of Def.,* 262 F.3d 1306, 1312 (Fed. Cir. 2001) (hereinafter *Rothe III*).

[20] Docket No. 98.

[21] *Id.*

5

1998,[22] but the Court again agreed with the DoD that Section 1207 was constitutional on its face.[23] In a separate opinion, the Court denied Plaintiff's first request for attorney's fees on Plaintiff's as-applied challenge, further affirming the DoD's position as substantially justified.[24] Although the Federal Circuit vacated the Court's summary judgment, it remanded the case in *Rothe V* because there was an insufficient record on which it could determine the facial constitutionality of Section 1207.[25] This remand provided the DoD with an opportunity to present evidence regarding the facial constitutionality of Section 1207, and at least suggested that the issue of facial constitutionality presented a close call.[26] Given that the DoD had a prior judgment in its favor regarding the facial constitutionality of Section 1207, and that the Federal Circuit remanded the case to provide the DoD with an opportunity to defend the statute, the DoD continued to be reaffirmed that its position was substantially justified. Then, shortly after the decision by the Court in *Rothe V*, this Court again agreed with the DoD's position for a fourth time, denying Plaintiff's motion for a preliminary

---

[22] *Rothe Dev. Corp. v. U.S. Dep't of Def.*, 324 F. Supp. 2d 840, 850 (W.D. Tex. 2004) (hereinafter *Rothe IV*).

[23] *Id.* at 860.

[24] *Rothe Dev. Corp. v. U.S. Dep't of Def.*, No. SA-98-CA-1011-XR, 2004 WL 1941290, at *4 (W.D. Tex. Aug. 31, 2004).

[25] *Rothe Dev. Corp. v. Dep't of Def.,* 413 F.3d 1327, 1335 (Fed. Cir. 2005) (hereinafter *Rothe V*).

[26] *See id.*

injunction against the DoD's use of any race-based programs.[27] The Court then agreed with the DoD's position a fifth time in denying Plaintiff's motion for reconsideration on the same issue.[28]

Section 1207 was again amended in 2006. In *Rothe VI*, the Court agreed with the DoD for a sixth time, granting its motion for summary judgment and holding that the 2006 version of Section 1207 (hereinafter "2006 version") was facially constitutional.[29] Although that decision was eventually reversed, the string of successes the DoD achieved throughout multiple rounds of this litigation via rulings from multiple judges suggests there was at least a reasonable basis in law for the DoD's position.

2. **The changes reflected in the 2006 reenactment of Section 1207 further provided the DoD's position with a reasonable basis in law**

Congress attempted to cure constitutionality concerns of Section 1207 when it reenacted Section 1207 in 2006 and contemporaneously modified incorporated statutes.[30] Accordingly, the 2006 version of Section 1207 varied

---

[27] *Rothe Dev. Corp. v. U.S. Dep't of Def.*, No. SA-98-CA-1011-XR, 2006 WL 2052944, at *1 (W.D. Tex. July 24, 2006).

[28] *Id.*

[29] *Rothe Dev. Corp. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 775, 883 (W.D. Tex. 2007) (hereinafter *Rothe VI*).

[30] For example, the SDB certification process under § 8(d) of 13 C.F.R. pt. 124, subpt. B (and incorporated by Section 1207) was later modified by Congress. Such a change was likely in response to the court's finding that it lacked narrow tailoring "insofar as it obviate[d] an individualized inquiry into economic disadvantage." *See Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1184 (10th Cir. 2000) [hereinafter "*Adarand VII*"].

7

significantly from the 1992 version, whose facial constitutionality was never decided by a court. In *Rothe VI*, the Court outlined the differences between the two versions of Section 1207, noting that:

> "[t]he present (*i.e.* January 2, 2006) reauthorization of the 1207 Program ("2006 Reauthorization") differs in several fundamental ways from the October 23, 1992 reauthorization ("1992 Reauthorization") that was applied to Rothe in 1998. Unlike the 1992 Reauthorization, the 2006 Reauthorization (1) contains a PEA [(price evaluation adjustment)] suspension clause; (2) gives the Department of Commerce discretion to recalculate the size of the PEA based on available data; (3) requires an individualized determination of economic disadvantage to qualify for SDB [(small disadvantaged business)] status; (4) lowers the standard required for non-minority firms to qualify for SDB status; (5) allows any interested party to challenge a SDB certification; and (6) allows the presumption of disability to be overcome with credible evidence to the contrary.[31]

The first three differences noted above: the PEA suspension clause; the discretion provided to recalculate the size of the PEA based on available data; and the individualized determination of economic disadvantage to qualify for SDB status; specifically addressed concerns of over-inclusiveness, under-inclusiveness, and inadequate narrow tailoring. Additionally, new regulations under the 2006 version addressed and followed the court's suggestion in *Adarand VII*[32] to show that a government entity undertook the necessary effort to tailor these programs for those who truly have suffered from the effects of

---

[31] *Rothe VI*, 499 F. Supp. 2d at 783.

[32] Specifically, the court suggested requiring "a separate showing of [economic and social] disadvantage [such as a short narrative statement of economic disadvantage faced]."*Adarand VII*, 228 F.3d at 1184.

8

prior discrimination.[33] Similarly, these regulations eliminated the prior race-based presumption of economic disadvantage and extended the individualized determination process of § 8(a) to § 8(d), which required submission of a narrative statement of purported economic disadvantage for each group.[34]

The fourth difference noted above, lowering the standard for non-minority firms to qualify for SDB status, was Congress's attempt to reduce the burden of race-based programs on third parties.[35] Specifically, Congress recognized that some disadvantaged business enterprise (hereinafter "DBE") subcontractors and some non-DBE subcontractors were likely to be deprived of business opportunities.[36] One of these changes made it easier for non-minority DBEs to participate in SDB programs by lowering their standard of proof from a clear and convincing standard to a preponderance of evidence standard when proving social disadvantage for SDB certification.[37] Additional congressional measures capped the subsidy provided in an effort to circumscribe the financial incentive for prime contractors to hire DBEs.[38] Improved regulations also required recipients to ensure that DBEs are not "so overconcentrated in a certain type of

---

[33] *Id.* (referring to the court's concern in *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989)).

[34] *Rothe VI*, 499 F. Supp. 2d 775 at n.22.

[35] *See Adarand VII*, 228 F.3d at 1183.

[36] *See id.* (citing the conclusion reached by Justice Powell in *Wygant v. Jackson Board of Education*, 476 U.S. 267, 280 (1986)).

[37] *Id.*

[38] These limitations included: (1) limiting compensation under the SCC to no more than 1.5-2% above the total contract amount; and (2) a limit on monetary compensation of $50,000-$100,000. *See id.* at 1183.

work as to unduly burden the opportunity of non-DBE firms to participate."[39]

The fifth and sixth differences, allowing any interested party to challenge a SDB certification and allowing the presumption of disability to be overcome with credible evidence, reflect Congress's effort to ensure that the SDB and PEA programs were only used by individuals truly affected by discrimination.[40] New regulations helped the Government identify and eliminate individuals who were not disadvantaged and who no longer qualified for the program.[41] These regulations included safeguards such as a nine-year participation limit[42] and a cap placed on the net worth of individuals.[43]

Further supporting the DoD's position was this Court's recognition of the changes reflected in the 2006 amendment, holding that the 2006 amendment of Section 1207 rendered the 1999 and 2002 amendments as not justiciable, and claims against these versions as moot.[44] Considering the aforementioned changes in legislation, there was a reasonable basis in law for the DoD's position in proceeding with the litigation.

---

[39] *Id.*

[40] *Rothe IV*, 324 F. Supp. 2d at 858.

[41] *Id.* at 859 (citing *Fullilove v. Klutznick*, 448 U.S. 448, 487 (1980)).

[42] *See* 13 C.F.R. § 124.2.

[43] *See id.* § 124.104(c)(2).

[44] The Court reasoned that ruling on the 1992 and 2002 amendments of Section 1207 would require a judgment on a hypothetical state of facts given the change in the law. Additionally, the Court cited the doctrines of waiver and law of the case. *Rothe VI*, 499 F. Supp. 2d at 783.

### 3. The DoD's position was substantially justified

Plaintiff argues that in addition to a singular determination that the DoD's position was substantially justified on the whole, the Court must also determine whether the DoD was substantially justified at every stage of the litigation, citing *Fritz v. Principi*.[45] The Court finds that the DoD's position was substantially justified at each stage of the litigation when proceeding through the aforementioned procedural history of the case without the benefit of hindsight.

### C. There is a Reasonable Basis in Fact for the DoD's Position

#### 1. As recognized by the Federal Circuit, there remains a genuine dispute about the existence of discriminatory practices in government contracting

The Federal Circuit has held that there is at least some basis in fact for Congress's concern that there is discrimination in government contracting. Therefore, the Court concludes that there is a reasonable basis in fact for the DoD's position.

In holding Section 1207 facially unconstitutional, the Federal Circuit was primarily concerned with the lack of the robustness of evidence before Congress

---

[45] In *Fritz*, the Federal Circuit reversed the denial of an EAJA application for attorney's fees by the Court of Appeals for Veterans Claims (CAVC). The CAVC had awarded Plaintiff attorney's fees for the underlying dispute, but denied attorney's fees for the portion of the litigation regarding a fee agreement. The court reasoned that attorney's fees for the relevant portion of litigation was not the subject of the underlying civil action brought against an agency for the purposes of EAJA. Rather, it was a "fee-for-fees claim ... only collaterally related to the issues for which the original EAJA application was granted." In reversing, the Federal Circuit held that the award of attorney's fees is not limited to the stages of litigation only regarding the underlying issue. *See Fritz v. Principi*, 264 F.3d 1372 (Fed. Cir. 2001).

11

when it reenacted Section 1207 in 2006, specifically holding that Congress did not have a sufficient number of studies to form a sufficient basis to constitute a compelling interest or to satisfy a strict scrutiny test. However, as recognized by the Federal Circuit, the lack of evidentiary support in this instance does not preclude the existence of actual discrimination in government contracting. Specifically, the Federal Circuit recognized that while the evidence was insufficient in this context, such evidence could be sufficient in some circumstances, stating that:

> To be clear, we do not hold that the defects in the availability and capacity analyses in these six disparity studies render the studies wholly unreliable for any purpose. Where the calculated disparity ratios are low enough, we do not foreclose the possibility that an inference of discrimination might still be permissible for some of the minority groups in some of the studied industries in some of the jurisdictions. And we recognize that a minority-owned firm's capacity and qualifications may themselves be affected by discrimination.[46]

Additionally, the Federal Circuit explicitly declined to reject the methodological validity of the studies relied on by Congress in this case[47] and acknowledged that the DoD has awarded government contracts to some contractors and subcontractors that engage in discriminatory practices.[48]

Moreover, the Federal Circuit approved of the Ninth and Tenth Circuits'

---

[46] *Rothe VII*, 545 F.3d at 1045.

[47] *See id* at 1045 n.14 (declining to determine the methodological validity of the studies before Congress when reenacting Section 1207 in 2006).

[48] *See id.* at 1048-1049 (specifically the Federal Circuit stated, "[u]ndoubtedly, some state and local contractors have engaged in discrimination. And given the amount of money spent by [the] DOD, it is likely that some money injected by [the] DOD into the nationwide contract market has made its way into the hands of contractors, subcontractors, or sub-subcontractors who have engaged in discrimination.").

reliance upon similar studies to support race-based measures regarding highway construction, because the courts relied on many more studies, and therefore had a broader base.[49] In doing so, the Federal Circuit "stress[ed] that in holding these six studies insufficient in this case, [it] do[es] not necessarily disapprove of decisions by other circuit courts that have relied, directly or indirectly, on municipal disparity studies to establish a federal compelling interest" and concluded that "different studies, in the context of different legislative history, may support different conclusions."[50] As reflected in the Federal Circuit's opinion, the Court finds that there is a sufficient basis in fact for the DoD's position.

2. **The lack of evidence before Congress is not dispositive of substantial justification**

In claiming that there was a lack of reasonable basis in fact for the DoD's position, Plaintiff argues that there could be no reasonable basis "once Congress failed," suggesting that the DoD had no reasonable basis for defending Section 1207 in its reenacted, amended form.[51] Plaintiff's argument is based on its contention that if a case lacks substantial evidence and does not turn on mere evidentiary ambiguities or involve novel legal principles, the absence of support

---

[49] *See id.*

[50] *Id.* at 1046.

[51] Docket No. 377 at 2-3 (attributing the lack of evidentiary support on summary judgment to the lack of sufficient evidence before Congress when reenacting Section 1207).

13

constitutes an absence of justification.[52] However, the mere fact that the DoD's position ultimately proved unsuccessful at a later stage in this litigation does not preclude substantial justification. The standard for summary judgment does not equate with the standard for awarding attorney's fees under the EAJA.

## Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Attorney's Fees (Docket No. 372).

It is so ORDERED.

SIGNED this 11 day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[52] Docket No. 377 at 1-3 (citing *Baker v. Bowen*, 839 F.2d 1075, 1081 (5th Cir. 1988)).